IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION

OLEKSANDR YANKO

*Plaintiff,*

*v.*

RECTOR AND VISITORS OF THE

UNIVERSITY OF VIRGINIA,

ANNE M. MILLS, in her capacity as

Pathology Program Director,

KAREN WARBURTON, in her capacity as

Coordinator for Wellness Program,

MONICA LAWRENCE, in her capacity as

Designated Institutional Official,

RODNEY DIEHL, in his capacity as Faculty

and Employee Assistance Program

Consultant,

BETH DANEHY, in her capacity as Director

of Faculty and Employee Assistance Program

*Defendants.*

No. 3:25CV80

CLERK'S OFFICE U.S. DISTRICT. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 29 2025

LAURA A. AUSTIN, CLERK
BY: /s/
DEPUTY CLERK

1

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

1. Introduction

2. Statement of Jurisdiction

3. Legal Standard for Temporary Restraining Order

4. Statement of Facts

5. Argument

    o   A. Likelihood of Success on the Merits

    o   B. Irreparable Harm

    o   C. Balance of Equities

    o   D. Public Interest

6. Conclusion

7. Prayer for Relief

8. Table of Authorities

# INTRODUCTION

Plaintiff Oleksandr Yanko, a resident physician in the Department of Pathology at the University of Virginia ("UVA"), respectfully moves this Court for a Temporary Restraining Order, or, in the alternative, a Preliminary Injunction, to prevent imminent and irreparable harm. Defendants — the Rector and Visitors of UVA, Rodney Diehl, Karen Warburton, M.D., Anne Mills, M.D., and Monica Lawrence, M.D. — have threatened Plaintiff with termination, effective October 1, 2025, and have coerced Plaintiff to attend psychotherapy with a provider of their choosing, in a language that is not Plaintiff's native language, as well as non-emergent professional wellness programs unrelated to clinical duties, all at Plaintiff's personal expense, which Plaintiff cannot afford. Plaintiff is also being required to disclose personal medical and mental health information to Defendants as a condition of compliance. The direct threats and coercive actions have been made by Karen Warburton, M.D., and Rodney Diehl, acting as representatives of UVA. Anne Mills, M.D., is participating in this process in a retaliatory capacity, and Monica Lawrence, M.D., holds ultimate authority over the decision regarding Plaintiff's termination. These actions violate multiple federal employment and disability laws, preventing Plaintiff from fulfilling the coercive requirements imposed by Defendants.

Plaintiff has a disability protected under the Americans with Disabilities Act. If the termination proceeds, Plaintiff will immediately lose lawful U.S. visa status, requiring Plaintiff to leave the country, and will lose health insurance, putting Plaintiff at risk of being unable to access necessary medical care. Additionally, the termination and ongoing retaliatory actions have delayed Plaintiff's fellowship and graduation, resulting in lost professional training and future earning capacity.

Because Defendants' actions are imminent and violate federal law, urgent injunctive relief is necessary to prevent irreparable harm and preserve Plaintiff's rights. Plaintiff respectfully requests that this Court issue a Temporary Restraining Order preventing enforcement of the threatened termination and coercive requirements until the Court can fully hear this matter.

# STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal statutes including the Americans with Disabilities Act, Title VII, FMLA, Section 504 of the Rehabilitation Act, and the Fourteenth Amendment of the U.S. Constitution. This Court has authority to grant injunctive relief under Fed. R. Civ. P. 65.

# LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDER

A Temporary Restraining Order (TRO) is an extraordinary remedy designed to preserve the status quo and prevent imminent and irreparable harm prior to a full hearing on the merits. Fed. R. Civ. P. 65(b). The standard for granting a TRO is substantially similar to that for a preliminary injunction. To obtain a TRO, the moving party must demonstrate:

1. Likelihood of Success on the Merits
   The movant must show a reasonable probability of prevailing on the underlying claims. Violations of the Americans with Disabilities Act (ADA) and retaliatory employment actions can support injunctive relief. *See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–23 (1993) (hostile work environment under federal employment discrimination laws); PGA Tour, Inc. v. Martin, 532 U.S. 661, 675–76 (2001) (ADA requires reasonable accommodations for state actors); Tennessee v. Lane, 541 U.S. 509, 533 (2004) (ADA protects individuals from discrimination by state entities).*

2. Irreparable Harm
   The movant must demonstrate that, absent injunctive relief, they will suffer harm that cannot be remedied by monetary damages. In the employment and ADA context, this includes the threat of termination, loss of health benefits, interference with protected rights, and disruption to professional training. *See Harris, 510 U.S. at 23; PGA Tour, 532 U.S. at 675–76; EEOC v. Wal-Mart Stores, Inc., No. CV-06-1234, 2006 WL 2437305, at 2 (D. Ariz. Aug. 22, 2006) (granting TRO to prevent adverse employment action against an employee with a disability).*

3. Balance of Equities
   Courts weigh the potential harm to the movant against any harm the injunction may cause the nonmoving party. When federal rights are threatened, the balance of equities often favors protecting the employee. *See Harris, 510 U.S. at 23.*

4. Public Interest
   Courts consider whether granting or denying the TRO serves the public interest. Protecting employees from discrimination and safeguarding federally guaranteed rights clearly serves the public interest. *See Tennessee v. Lane, 541 U.S. at 533; PGA Tour, 532 U.S. at 675–76.*

## STATEMENT OF FACTS

The following facts are drawn from Plaintiff's affidavit, filed concurrently herewith, which provides a detailed account of the events described below.

Plaintiff Oleksandr Yanko is a resident physician in the Department of Pathology at the University of Virginia ("UVA") and has bipolar disorder, a condition protected under the Americans with Disabilities Act.

On August 6, 2025, Plaintiff initiated contact with his primary care physician to request psychiatric support due to his condition. That same evening, Plaintiff asked his program director, Dr. Anne Mills, whether she could assist in scheduling the appointment sooner. On August 7, Plaintiff attempted to report to work but left due to feeling unwell, and took a sick day on August 8. Plaintiff's request for psychiatric assistance was shared by Dr. Mills with CWP (Karen Warburton) and FEAP (Rodney Diehl) without Plaintiff's consent. Plaintiff has remained compliant with prescribed medications and psychiatric appointments as part of his ongoing treatment.

Initially, Plaintiff was informed that clearance from his primary care physician and psychiatric evaluation would be sufficient to return to work. On August 12, 2025, Dr. Mills informed Plaintiff of unspecified professional concerns that had never been previously reported or documented, placed him on a Fitness-for-Duty (FFD) evaluation, and stated that the department would provide financial support for the process. The FFD evaluation was conducted from August 18–21 by the Professional Renewal Center (PRC), located out-of-state. Plaintiff's requests for local evaluation options were denied by Dr. Warburton despite Plaintiff's acute mental health state. Plaintiff has never received the exact reason for the FFD referral, any due process documentation, or a copy of the PRC evaluation report.

On August 28, 2025, Dr. Warburton informed Plaintiff that inpatient treatment at an out-of-state center would be required according to the PRC evaluation. The exact justification and PRC report were never provided; Plaintiff was only told that the programs involved "trauma treatment." The recommended programs included centers in Mississippi and Kansas, with estimated costs of $20,000–$30,000, which Plaintiff cannot afford. Compliance would also require Plaintiff to disclose sensitive personal medical and mental health information to Defendants. Plaintiff raised questions regarding the necessity, cost, and feasibility of attending the programs, which were not addressed. After these inquiries, Dr. Warburton delegated

5

coordination of Plaintiff's treatment to FEAP (Rodney Diehl).

In early September 2025, Plaintiff filed complaints with the University of Virginia Office for Civil Rights (OCR) and the Equal Employment Opportunity Commission (EEOC). Plaintiff also submitted multiple written requests to FEAP and Dr. Warburton seeking clarification regarding the FFD referral, PRC evaluation, and institutional policies, which went unanswered. Plaintiff was informed that he would be required to pay for the programs personally, despite prior assurances of departmental financial support. Plaintiff also requested that the programs and evaluations be provided in his native language, which was not accommodated.

On September 26, 2025, Plaintiff was informed that termination would occur if the coercive requirements were not fulfilled, with a final deadline of October 1, 2025. The programs were financially inaccessible, required disclosure of sensitive personal medical information, and made compliance impossible.

These actions have caused, and will continue to cause, irreparable harm, including imminent loss of lawful visa status, loss of health insurance, inability to access necessary medical care, and delay of Plaintiff's fellowship and graduation, resulting in lost professional training and future earning capacity.

Further details, including supporting exhibits and communications, are provided in Plaintiff's affidavit filed concurrently herewith.

# ARGUMENT

A. Likelihood of Success on the Merits

Americans with Disabilities Act (ADA) & HIPAA & Section 504 / 29 U.S.C. § 794(a):
Plaintiff has a disability protected under the ADA. Shortly after disclosing his condition and seeking psychiatric support, Plaintiff was subjected to coercive requirements, including mandatory out-of-state evaluations and professional wellness programs unrelated to essential job duties, without reasonable accommodations, explanation, or justification. By refusing local evaluation options and forcing Plaintiff to travel during an acute mental health episode, Defendants caused documented emotional distress (as reflected in Plaintiff's medical records). Plaintiff was also required to pay for these programs personally, despite prior departmental assurances of financial support, further demonstrating the absence of accommodations.

6

*Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013) (employer's refusal to accommodate a disabled employee while mandating treatment constitutes ADA violation), *Laird v. Fairfax County*, 978 F.3d 890 (4th Cir. 2020) (Fourth Circuit recognizes that adverse employment action closely following protected activity, like requesting accommodations, supports an ADA retaliation claim, *Israelitt v. Enterprise Services LLC, No. 22-1382 (4th Cir. 2023)* (Fourth Circuit allows ADA retaliation claim to proceed where employee faced termination after requesting accommodations).

These actions constitute both disability discrimination and retaliation under ADA §§ 12112(a)(1), 12112(b)(5)(A), 12112(d)(4)(A), and §§ 12203(a)–(b). See *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d Cir. 2003) (employer medical inquiries must be job-related and consistent with business necessity); *EEOC v. Grane Healthcare Co.*, 2 F. Supp. 3d 667, 681 (W.D. Pa. 2014) (demanding unnecessary medical records violates ADA). Defendants' timing and adverse treatment demonstrate retaliation: Plaintiff was treated with coercive mandates following disclosure of his disability and requests for accommodations, consistent with ADA's anti-retaliation provision, 42 U.S.C. § 12203(a). Section 504 applies because UVA is a federally funded institution, and denying accommodations while coercing participation in costly, unnecessary programs constitutes both disability discrimination and retaliation.

Defendants also demanded disclosure of Plaintiff's sensitive mental health information, including psychotherapy notes and laboratory results, unrelated to essential job functions, in violation of HIPAA (45 C.F.R. § 164.508(a)(2)) and ADA prohibitions against non-job-related medical inquiries. Plaintiff repeatedly requested written justification, policies, and documentation supporting these mandates, which Defendants failed to provide.

FMLA / 29 U.S.C. §§ 2612 & 2615:
Plaintiff took sick leave to manage a serious health condition. Rather than accommodating him, Defendants coerced participation in the Fitness-for-Duty with out-of-state evaluation resulting in mental health harm, while threatening termination for noncompliance. This interference with protected leave rights, coupled with adverse employment action, constitutes violations of the FMLA. See 29 U.S.C. § 2615(a)(1); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160–61 (1st Cir. 1998) (employer action closely following FMLA leave request supports interference/retaliation claim).

Title VII / § 2000e-2(a)(1):
Plaintiff requested that programs and evaluations be conducted in his native language.

7

Defendants' refusal to accommodate this request constitutes disparate treatment on the basis of national origin and interferes with Plaintiff's ability to access the programs, supporting a claim under Title VII § 2000e-2(a)(1). Effective mental health and professional wellness programs require meaningful communication; failure to provide services aligned with Plaintiff's linguistic and cultural needs can render the accommodations ineffective and creates barriers based on protected characteristics, including language. See *EEOC v. Premier Operator Servs., Inc.*, 113 F. Supp. 2d 1066, 1070 (N.D. Tex. 2000) (English-only policies can constitute national origin discrimination). While the differential treatment may not be as overt as traditional adverse employment actions, Title VII protects employees from practices that deny access to employment-related benefits or services based on national origin.

14th Amendment – Procedural Due Process & Equal Protection:
As a state actor, UVA violated Plaintiff's procedural due process and equal protection rights by imposing medical and wellness requirements without Plaintiff's consent, refusing to provide documentation or justification for the Fitness-for-Duty referral, and threatening termination for noncompliance. These actions substantially restrict Plaintiff's liberty to make fundamental personal decisions regarding his own medical and therapeutic care. By denying Plaintiff the ability to choose his own qualified providers, including psychiatrists and psychotherapists, Defendants effectively coerced him into receiving services from out-of-state centers selected by the university, without regard for his clinical needs, personal safety, cultural or linguistic preferences, or financial ability. *Willner v. Frey*, 243 F.3d 339 (4th Cir. 2001) (Direct Fourth Circuit support for procedural due process in employment). *Winston v. McCauley*, 891 F.3d 450 (4th Cir. 2018) (public employees must receive adequate notice of adverse employment actions; vague allegations or unexplained mandates can violate due process).

This deprivation of choice in selecting providers constitutes a serious intrusion on Plaintiff's liberty interest because it removes his autonomy to manage his own health and treatment. See *Bd. of Regents v. Roth*, 408 U.S. 564, 572–73 (1972) (recognizing property and liberty interests in continued public employment); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43 (1985) (public employees entitled to due process when property interest in a job threatened). The coercive requirement to attend costly, out-of-state programs, without explanation or accommodation, also imposes a substantial burden on Plaintiff's property interests, including salary, fellowship opportunities, visa status, and the timely completion of residency. Moreover, the refusal to respond to repeated requests for justification, institutional policies, and documentation regarding the Fitness-for-Duty referral demonstrates a lack of procedural protections and due process, heightening the risk of arbitrary and punitive actions. Taken together, the forced imposition of programs and restrictions on provider choice represents both a deprivation of liberty and property without due process, in violation of the 14th Amendment.

State law:
Under Virginia law, Plaintiff's rights are similarly protected. The Virginia Human Rights Act (§ 2.2-3900) prohibits discrimination based on disability and national origin, which encompasses Defendants' refusal to accommodate Plaintiff's mental health condition, including forced traveling, and language needs. The Virginia Tort Claims Act (§ 8.01-195.1) provides a basis for claims such as intentional infliction of emotional distress resulting from coercive and retaliatory actions. Virginia State Privacy Law (§ 32.1-127.1:03) safeguards against unauthorized disclosure of medical information, directly applicable to Defendants' demand for sensitive personal records as a part of expected compliance. Virginia Workers' Compensation and Workplace Safety statutes (§ 65.2-100) protect employees from retaliation related to reporting unsafe conditions or medical issues, and Virginia Wage/Property Law (§ 40.1-29) supports Plaintiff's position regarding coercive financial burdens imposed by Defendants. Together, these statutes reinforce that Defendants' actions violate multiple state protections in addition to federal law.

B. Irreparable Harm

Threatened Termination and Visa Loss:
Plaintiff faces imminent termination on October 1, 2025. Such termination would immediately revoke his lawful visa status, forcing him to leave the United States. Plaintiff does not hold valid work or residency authorization in other countries, and returning to Ukraine, given the ongoing armed conflict, would expose him to unsafe circumstances. This loss of lawful presence and the inability to continue professional training in the United States constitutes clear and irreparable harm that cannot be remedied by monetary compensation. *Xiaotian v. Dep't of Homeland Sec.,* (2025) (loss of visa status constitutes irreparable injury requiring preliminary relief)

Loss of Health Insurance and Access to Care:
Termination would also result in the immediate loss of health insurance, which Plaintiff relies upon to manage his ADA-protected bipolar disorder. Access to ongoing psychiatric care, medication management, and therapy is critical to maintaining stability. Disruption of these services could cause deterioration in his mental health, disrupting ongoing treatment for a medically recognized disability and creating harm that cannot be adequately addressed through financial remedies alone. See *Henderson v. Bodine Aluminum, 70 F.3d 958, 961* (8th Cir. 1995) (loss of access to life-sustaining medical treatment constitutes irreparable harm).

Professional Harm:
Plaintiff's training has already been delayed by the coercive requirements and ongoing Fitness-for-Duty process. If termination or forced delays occur, he risks repeating an entire year

9

of residency, which would impede his ability to pursue fellowship opportunities and delay his advancement to attending-level practice. These setbacks threaten prospective professional development and training opportunities, causing irreversible harm to his career trajectory.

Legal Support:
Courts recognize that threats to federal rights, including ADA protections and FMLA leave, inherently create irreparable harm. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); PGA Tour, Inc. v. Martin, 532 U.S. 661, 675–76 (2001); Tennessee v. Lane, 541 U.S. 509, 533 (2004).

Health harm:
Plaintiff's ongoing compliance with psychiatric treatment is critical to managing his ADA-protected condition. Forced termination or coerced out-of-state programs would disrupt care, threaten stability, and impede his professional development, creating harm that cannot be remedied through money alone.

C. Balance of Equities

Plaintiff's Rights vs. Institutional Interests:
The equities weigh strongly in favor of Plaintiff. He faces immediate threats to his health, safety, professional training, and legal status in the United States. Preventing termination and coercive medical mandates ensures that he can maintain stability in his ADA-protected condition, continue necessary psychiatric care, and complete residency training without unlawful interference.

Minimal Burden on Defendants:
Granting temporary relief would impose minimal or manageable burden on the University. Defendants are not required to alter essential operations or staffing; the relief sought merely maintains Plaintiff's current employment status and prevents enforcement of coercive, unexplained requirements. The accommodation preserves the status quo without disrupting the department's workflow or patient care.

Preventing Further Harm:
Allowing Defendants to enforce the October 1 deadline or require involuntary, costly out-of-state programs risks irreversible harm to Plaintiff's health, visa status, and professional career. By contrast, enjoining these actions temporarily does not create comparable harm to the University. Any administrative inconvenience is outweighed by the protection of Plaintiff's federal rights

under the ADA, FMLA, and 14th Amendment, as well as his well-being and ability to continue training.

Legal Support:
Courts consistently recognize that when the threatened harm involves deprivation of federal rights or personal liberty, the balance of equities favors the individual. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); PGA Tour, Inc. v. Martin, 532 U.S. 661, 675–76 (2001); Tennessee v. Lane, 541 U.S. 509, 533 (2004).

D. Public Interest

Upholding Federal Protections:
The public interest is served by ensuring compliance with federal laws such as the ADA, FMLA, and Section 504. These statutes protect individuals with disabilities from coercion, retaliation, and discriminatory practices. Granting relief affirms the principle that employees, including medical trainees, cannot be subjected to unnecessary medical mandates or lose their employment for exercising federally protected rights.

Protecting Patient Care and Workforce Stability:
Residency programs exist to train physicians who provide essential health care. Allowing Defendants to terminate Plaintiff under coercive conditions undermines the stability of the medical workforce and discourages other residents from disclosing disabilities or seeking necessary medical care. Protecting Plaintiff's rights ensures that trainees can address health needs without fear of retaliation, ultimately improving patient safety and physician well-being.

Preventing State Overreach:
Because UVA is a public institution and state actor, the public has an interest in ensuring that government entities respect constitutional rights. Protecting Plaintiff from coerced participation in medical or therapeutic programs, imposed without due process or justification, reinforces limits on state power and safeguards individual liberty against arbitrary government action.

Minimal Public Burden:
Granting temporary relief does not harm the public or impose excessive costs. It simply preserves the status quo by preventing termination until Plaintiff's claims can be heard. In contrast, allowing termination risks the public perception that federally funded institutions may disregard anti-discrimination protections, undermining confidence in the fairness and legality of

public universities.

Legal Support:
Courts consistently hold that enforcing federal civil rights protections aligns with the public interest. See Tennessee v. Lane, 541 U.S. 509, 533 (2004) (ADA upholds access and equal treatment by state entities); PGA Tour, Inc. v. Martin, 532 U.S. 661, 675–76 (2001) (reasonable accommodations serve both fairness and broader societal interests).

## CONCLUSION|

Plaintiff has demonstrated a strong likelihood of success on the merits of his claims under the ADA, Section 504, FMLA, HIPAA, Title VII, and the Fourteenth Amendment. Defendants' coercive mandates, refusal to provide accommodations, denial of due process, and threats of termination violate clear federal protections. Plaintiff also faces imminent and irreparable harm, including the loss of visa status, health insurance, and medical care, as well as irreparable professional harm, including delayed fellowship and repeated residency year. The balance of equities favors Plaintiff, as temporary relief imposes minimal burden on Defendants while protecting Plaintiff's fundamental rights. Finally, the public interest strongly supports enforcing federal anti-discrimination and due process guarantees, ensuring accountability for state actors, and safeguarding the integrity of federally funded medical training programs.

For these reasons, Plaintiff respectfully requests that this Court grant a Temporary Restraining Order preventing Defendants from terminating his employment or otherwise interfering with his training, medical care, or visa status until these claims can be fully adjudicated.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

1. Issue a Temporary Restraining Order and/or Preliminary Injunction preventing Defendants from terminating Plaintiff's employment, enforcing coerced medical or wellness programs, or otherwise interfering with Plaintiff's training, medical care, or visa status until this matter can be fully heard on the merits;

2. Order Defendants to provide reasonable accommodations for Plaintiff's disability, including access to psychiatric care in his preferred language and at no personal cost;

3. Grant such other and further relief as the Court deems just and proper to protect Plaintiff's rights under the Americans with Disabilities Act, FMLA, HIPAA, Title VII, Section 504, and the Fourteenth Amendment.

## TABLE OF AUTHORITIES

**Cases**

- Bd. of Regents v. Roth, 408 U.S. 564 (1972)

- *Willner v. Frey*, 243 F.3d 339 (4th Cir. 2001)

- Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)

- *Winston v. McCauley*, 891 F.3d 450 (4th Cir. 2018)

- *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013)

- Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88 (2d Cir. 2003)

- Laird v. Fairfax County, 978 F.3d 890 (4th Cir. 2020)

- Israelitt v. Enterprise Services LLC, No. 22-1382 (4th Cir. 2023)

- EEOC v. Grane Healthcare Co., 2 F. Supp. 3d 667 (W.D. Pa. 2014)

- EEOC v. Premier Operator Servs., Inc., 113 F. Supp. 2d 1066 (N.D. Tex. 2000)

- Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993)

- Henderson v. Bodine Aluminum, 70 F.3d 958 (8th Cir. 1995)

- Hodgens v. Gen. Dynamics Corp., 144 F.3d 151 (1st Cir. 1998)

- PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001)

- Tennessee v. Lane, 541 U.S. 509 (2004)

- Xiaotian v. Dep't of Homeland Sec., 2025

**Statutes & Regulations**

- 42 U.S.C. §§ 12112(a)(1), 12112(b)(5)(A), 12112(d)(4)(A), 12203(a)–(b) (ADA)
- 29 U.S.C. §§ 2612 & 2615 (FMLA)
- 45 C.F.R. § 164.508(a)(2) (HIPAA)
- 42 U.S.C. § 2000e-2(a)(1) (Title VII)
- 29 U.S.C. § 794(a) (Section 504, Rehabilitation Act)
- Fed. R. Civ. P. 65(b)
- U.S. Const. amend. XIV, § 1

**Dated:** September 29, 2025

**Respectfully submitted,**

Signature: _____

Oleksandr Yanko
Witton Court 117, Apt #108
Charlottesville, VA 22903
Phone: 434-409-3187
Email: oleks.yanko@gmail.com

Plaintiff, Pro Se