CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
October 22, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Oleksandr Yanko, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:25-cv-00080 |
| Rector and Visitors of the University of Virginia *et al.*, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Plaintiff Oleksandr Yanko, a resident physician at the University of Virginia ("UVA") Department of Pathology, filed this action against the Rector and Visitors of UVA, Dr. Anne Mills, Dr. Karen Warburton, Monica Lawrence, Rodney Diehl, and Beth Danehy ("UVA Defendants") alleging unlawful conduct by various UVA employees related to Yanko's attempts to return to work following medical leave for his bipolar disorder. This matter is before the court on Yanko's motion for a temporary restraining order (Dkt. 2). Among other requested relief, Yanko asks the court to intervene in his fitness-for-duty process on his behalf and to enjoin UVA from terminating or threatening to terminate his employment. For the reasons stated below, the court will deny Yanko's motion.

### I. Background[1]

On August 6, 2025, Yanko contacted his primary care physician regarding psychiatric

---

[1] This section contains findings of fact the court has relied on to resolve Yanko's motion for a temporary restraining order. The findings of fact are derived from Yanko's complaint (Dkt. 1) and his memorandums in support of his motion for temporary restraining order (Dkts. 3, 7).

care for his bipolar disorder and asked his program director, Dr. Annie Mills, for help getting an appointment. (Compl. ¶ 13 (Dkt. 1).) Two days later, Yanko was placed on medical leave. *Id.* ¶ 14. Shortly thereafter, Dr. Mills told Yanko that he would need to complete UVA's fitness-for-duty process before returning to work. *Id.* ¶ 15. Yanko was directed to visit the Professional Renewal Center (PRC) in Kansas for the first evaluation of the fitness-for-duty process, which he attended in late August. *Id.* ¶ 16. The travel during Yanko's struggles with his mental health "caused [him] documented emotional distress." *Id.*

After returning from Kansas, Yanko continued his fitness-for-duty process into early September, primarily communicating with Dr. Karen Warburton at UVA's Clinician Wellness Program (CWP) and Rodney Diehl at UVA's Faculty and Employee Assistance Program (FEAP). (Pl.'s Mem. in Supp. Mot. for Temp. Restraining Order at 5–6 (Dkt. 3) [hereinafter "TRO Mem. I"].) Yanko raised questions about the necessity, feasibility, and cost of attending the programs that UVA provided as approved treatment options. *Id.* at 5. He also requested that his future treatment and evaluations be provided in his native language of Russian. *Id.* at 6.

Yanko also raised concerns about the sharing of his sensitive medical information with FEAP or CWP. (*See* Dkt. 3-13 at 1.) After Yanko "refus[ed] to authorize" the release of his records from the Kansas treatment to FEAP or CWP, Diehl informed Yanko via email on September 16 that "[his] continued employment with UVA is contingent upon compliance with conditions established by FEAP and/or [CWP], which cannot be determined without access to PRC's evaluation." (*Id.*) In response, Yanko provided the necessary release for his PRC records to be transferred to UVA. (Dkt. 3-17 at 1.) On September 26, 2025, Diehl

- 2 -

communicated PRC's treatment recommendations to Yanko via email and told him that "[a] failure to enroll in treatment by the end of business on Wednesday, October 1st, 2025 will constitute a breach of policy." (*Id.* at 1–2.) "Without treatment," Diehl continued, "we are not able to move to what would be the next phase in determining your ability to safely perform the essential functions of your position, a Fitness for Duty re-evaluation." (*Id.*)

Yanko remained "concerned" about using a provider of UVA's choosing, citing cost concerns and reiterating the fact that the fitness-for-duty process had felt "unsafe and unsupportive to an extreme degree." (Dkt. 3-19 at 2.) Worried that UVA was going to terminate his employment on October 1, 2025, if he did not consent to an approved treatment plan, Yanko filed an emergency motion for a temporary restraining order on September 29, 2025. (Dkt. 2.) The court ordered the UVA Defendants to file a response, which the Rector and Visitors of UVA did on October 9, 2025. (*See* Def.'s Mem. in Opp. Mot. Temp. Restraining Order (Dkt. 8) [hereinafter "Def.'s Resp."].)

## II.    Standard of Review

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. The standard for granting a temporary restraining order is the same as the standard for granting a preliminary injunction. *Young v. Draper*, No. 4:17-cv-00001, 2017 WL 598510, at *2 (W.D. Va. Feb. 14, 2017) (citation omitted); *see also Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (applying the preliminary injunction standard to a request for temporary restraining order). "Both are 'extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances.'" *Sarsour v. Trump*, 245 F.Supp.3d 719, 728 (E.D. Va. 2017) (quoting

*MicroStrategy Inc. v. Motorola*, 245 F.3d 335, 339 (4th Cir. 2001)). The court may grant a temporary restraining order or preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). They are "never awarded as of right." *Id.* at 24. To obtain one, the plaintiff must demonstrate (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Id.* at 20.

Finally, the court must liberally construe pleadings filed by a *pro se* party like Yanko. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). That said, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990).

### III.   Analysis

Based on the court's review of Yanko's complaint and his motion for a temporary restraining order, the court finds that the *Winter* factors do not favor an award of the requested relief.[2]

#### A. Likelihood of Success on the Merits

To satisfy the first factor, "[a] plaintiff need not establish a certainty of success, but must make a clear showing that [s]he is likely to succeed at trial." *Di Biase v. SPX Corp.*, 872

---

[2] Because Yanko does not establish a likelihood of success on the merits or a likelihood he will suffer irreparable harm without preliminary relief, the court does not reach the third and fourth *Winter* factors.

F.3d 224, 230 (4th Cir. 2017) (internal quotation marks omitted).  This burden is high, and "merely providing sufficient factual allegations to meet the Fed. R. Civ. P. 12(b)(6) standard of *Twombly* and *Iqbal* does not show a likelihood of success on the merits."  *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 60 (D. Md. 2020) (cleaned up).  For the following reasons, the court finds that Yanko has not demonstrated that he is likely to succeed on any of his claims.

    1.  <u>Disability Discrimination and Retaliation</u>

Yanko alleges that Defendants' actions constituted disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA").  He claims that "[s]hortly after disclosing his condition and seeking psychiatric support, [he] was subjected to coercive requirements, including mandatory out-of-state evaluations and professional wellness programs unrelated to essential job duties, without reasonable accommodations, explanation, or justification."  (TRO Mem I at 6.)

To establish an ADA discrimination claim, a plaintiff must prove that (1) he is disabled; (2) he was a qualified individual for the employment in question; and (3) he suffered an adverse employment action because of his disability.  *See Constantine v. Rector and Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).  Yanko is unlikely to succeed on this claim because he does not show that he suffered an adverse employment action.  *See Giang v. Potter*, 369 F.Supp.2d 763, 769 (E.D. Va. 2005) (finding that requesting a medical fitness-for-duty exam was not an adverse employment action); *see also Porter v. U.S. Alumoweld Co., Inc.*, 125 F.3d 243,

249 (4th Cir. 1997) (finding that a medical fitness-for-duty exam that was job-related and consistent with business necessity did not violate the ADA).

The ADA provides that an employer may require an employee to undergo a "medical examination" where the examination is "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). This standard is met where an employer "reasonably believes that an employee's medical condition impairs his ability to perform the essential functions of the job or the employee poses a direct threat to himself or others." *Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 339 (4th Cir. 2022) (internal quotation marks omitted). Defendants point out legitimate reasons to doubt Yanko's ability to perform the essential functions of his job as a resident physician and to suspect that he poses a risk to himself: (1) his bipolar disorder can trigger sever anxiety and distress at work, (2) Dr. Mills noted concerns about his behavior around and interactions with his colleagues, and (3) Yanko's psychiatrist noted a chronic risk of self-harm. (Def.'s Resp. at 9.) The fact that Yanko may believe that he can perform the essential functions of his job is not relevant to whether UVA can request a fitness-for-duty evaluation under the ADA. *Leonard v. Electro-Mech. Corp.*, 36 F.Supp.3d 679, 687 (W.D. Va. 2014). UVA mandating Yanko to participate in a fitness-for-duty evaluation therefore cannot be the basis for an ADA discrimination or retaliation claim.

Yanko also alleges he was threatened with termination of his employment in retaliation for his disclosure of his disability and his requests for accommodations. He appears to draw this inference from two statements that Rodney Diehl made via email, namely that (1) his continued employment may be contingent on his compliance with the fitness-for-duty

process, and (2) if he did not continue with the process and move forward with treatment by October 1, that would constitute a breach of policy. (Dkts. 3-13 at 1, 3-17 at 2.)

To adequately plead an ADA retaliation claim, "the complaint must allege facts supporting a plausible inference that the employer took an adverse employment action against the plaintiff because of the plaintiff's protected activity." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (cleaned up). Yanko, here too, fails to offer sufficient facts to demonstrate likelihood of success on this claim because he fails to establish an adverse employment action. "To rise to the level of an adverse employment action absent termination, the misconduct must be more than something that offends the employee, and instead must materially alter 'the terms, conditions, or benefits' of the plaintiff's employment. *Patterson v. Va. Dep't of Corr.*, No 3:23-cv-00757, 2024 WL 1704669, at *4 (E.D. Va. Apr. 19, 2024) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)).

The court does not find that Diehl's statements, even taken together, constitute an adverse employment action. Diehl did not explicitly threaten termination of Yanko's employment or even give any indication that Yanko would be terminated if he accrued a breach of policy. And even if he had, "[t]he threat of termination, standing alone, does not constitute an adverse employment action in the Fourth Circuit." *Patterson*, 2024 WL 1704669, at *5. An "aggravating factor" can, in some circumstances, render an unrealized threat of termination sufficiently adverse to be actionable under Title VII.[3] *Id.* Despite Yanko's

---

[3] "Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases." *Kelly v. Town of Abingdon, Va.*, 90 F.4th 158, 169 n.6 (4th Cir. 2024) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001)); *accord Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 655 n.8 (4th Cir. 2023). "Accordingly, our precedent for evaluating discrimination and retaliation claims under Title VII informs our analysis of the same theories of relief under the ADA." *Kelly*, 90 F.4th at 169 n.6.

frustrations with the fitness-for-duty process, it does not appear that the conduct of any of the UVA employees rises to the level of such an aggravating factor. *See id.*; *see also Noonan v. Consol. Shoe Co.*, 84 F.4th 566, 575 (2023).

Because Yanko has not made a clear showing that he suffered any adverse action by UVA, the court finds he is unlikely to succeed on his ADA discrimination and retaliation claim.[4]

2. Disclosure of Medical Information

Yanko alleges that UVA has violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA) by "demand[ing] disclosure of Plaintiff's sensitive mental health information, including psychotherapy notes and laboratory results." (TRO Mem. I at 7.) There is no private right to sue under HIPAA, nor can patients sue under 42 U.S.C. § 1983 to enforce HIPAA provisions. *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021). Yanko is therefore unlikely to succeed on this claim.

3. Interference with Protected Leave Rights

Yanko alleges that Defendants "coerced participation in the Fitness-for-Duty" process "[r]ather than accommodating him" when he was on sick leave, and that this amounted to "interference with [his] protected leave rights." (TRO Mem. I at 7.) Requiring employees to undergo a fitness-for-duty evaluation to return to work is permissible under the Family and

---

[4] Yanko also alleges that Defendants' conduct violates Section 504 of the Rehabilitation Act. Absent direct evidence of retaliation, Yanko must prove that he engaged in protected activity, that UVA took adverse action against him, and that the adverse action was causally connected to his protected activity. *See S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016). Here, Yanko is unlikely to succeed on his claim for Section 504 retaliation because the evidence suggests "legitimate and plausible nonretaliatory reason[s]" for the University's actions. *See id.* (finding such reasons sufficient to defeat claim for Section 504 retaliation). As explained above, the evidence appears to show that UVA had legitimate reasons to doubt Yanko's ability to perform the essential functions of his job as a resident physician and to suspect that he poses a risk to himself. Yanko is therefore unlikely to succeed on a Section 504 claim.

Medical Leave Act (FMLA). *See Porter*, 125 F.3d at 249 (finding that an employer's requiring an employee to complete a fitness-for-duty evaluation to return from medical leave was permissible under the FMLA and the ADA). Because Yanko does not sufficiently allege a violation of the FMLA, he is unlikely to succeed on this claim.

    4. <u>National Origin Disparate Treatment</u>

Yanko alleges that UVA refuses to offer him treatment options in his native language during the fitness-for-duty process, and that this constitutes disparate treatment based on his national origin in violation of Title VII. (TRO Mem. I at 7–8.) Disparate treatment claims under 42 U.S.C. § 2000e-2 require plaintiffs to allege discriminatory intent. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988). Yanko does not allege any facts that plausibly suggest that UVA had any discriminatory intent in offering Yanko treatment options that did not include a Russian-language option or that any aspect of the fitness-for-duty process was influenced by Yanko's national origin. Yanko is unlikely to succeed on his Title VII claim.

    5. <u>Procedural Due Process and Equal Protection</u>

Yanko alleges that UVA "violated [his] due process and equal protection rights" by subjecting him to the fitness-for-duty process, and "substantially restrict[ed] [his] liberty to make fundamental personal decisions regarding his own medical and therapeutic care" by only allowing him to complete the fitness-for-duty evaluation by undergoing treatment with a UVA-approved provider. (TRO Mem. I at 8.) He continues that this "deprivation of choice

in selecting providers constitutes a serious intrusion on [his] liberty interest because it removes his autonomy to manage his own health and treatment." *Id.*

While Yanko has a right to refuse medical treatment, *Vacco v. Quill*, 521 U.S. 793, 807 (1997), this right does not vest him with due process interest in refusing to submit to fitness-for-duty evaluations, *see Capen v. Saginaw Cnty.*, 103 F.4th 457, 466 (6th Cir. 2024). Yanko has "not shown that his ability to refuse [fitness-for-duty] evaluations was protected by the Constitution." *Id.* Yanko's exhibits show UVA employees attempting to work with him to find an institutionally approved treatment program. As Defendants note, "[t]he university's health system has both a legal and ethical obligation to ensure that all physicians practicing within its facilities, including residents in training, are mentally and physically fit to safely perform their duties without posing risks to patients or colleagues." (Def.'s Resp. at 14.) Yanko is not entitled to hold his position as resident physician if he cannot follow UVA's fitness-for-duty procedure.

Because Yanko does not show that he is likely to succeed on any of his claims, he does not meet his burden on this *Winter* factor, and the court may deny his motion for emergency relief without further consideration of the other factors. *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023). However, the court notes that, even on consideration of the next factor, Yanko does not meet the high standard required for a grant of emergency injunctive relief.

**B. Likelihood of Irreparable Harm**

Even had Yanko shown a likelihood of success on the merits, which he did not, he cannot carry his burden on the second *Winter* factor. A plaintiff seeking a temporary restraining order or a preliminary injunction must also make a clear showing that future

- 10 -

irreparable harm is likely if an injunction is not entered. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Moreover, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Here, Yanko seeks emergency injunctive relief to avoid being terminated as a resident physician in the University's Pathology Department. He claims that losing his job would "immediately revoke his lawful visa status," result in the "immediate loss of [his] health insurance," which he needs to manage his condition, and may delay his residency, which would cause "irreversible harm to his career trajectory." (TRO Mem. I at 9–10.)

The court first notes that, "[i]n equity, one cannot complain of irreparable harm that they can themselves readily remedy." *Weathers v. Univ. of N.C. at Chapel Hill*, No. 1:08CV847, 2008 WL 5110952, at *4 (M.D.N.C. Dec. 4, 2008) (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244–45 (1933)); *see* 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. 2025) ("Not surprisingly, a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted."). Here, Yanko may consent to the fitness-for-duty evaluation and continue to work towards a return to work. While the court understands that Yanko is frustrated with the available treatment plans, he is not entitled under law to choose his own treatment plan to satisfy his employer's fitness-for-duty requirements.

Setting aside that principle, though, Yanko's claims are too speculative for this court to find a likelihood of irreparable harm. As explained above, UVA has not explicitly threatened

- 11 -

Yanko's termination. Despite Yanko's claim that he would be fired on October 1, 2025, UVA confirmed that he was still employed and on medical leave with full health insurance as of October 8, 2025. (Dkt. 8-1 at 2.) Yanko has not presented sufficient evidence to suggest that his termination is imminent.

Further, it does not appear that Yanko's lawful visa status would be immediately revoked should he lose his job. H1-B visa holders have a sixty-day grace period to find a new job or seek a change of their immigration status. 8 C.F.R. § 214.1(l)(2). Yanko has not presented sufficient evidence that he faces imminent deportation to Ukraine.

Finally, Yanko's argument for professional harm is too speculative for this court to find a likelihood of irreparable harm. Yanko claims that further delays in returning to work would risk delays in the completion of his residency, which would "impede his ability to pursue fellowship opportunities and delay his advancement to attending-level practice." (TRO Mem. I at 9–10.) Yanko alleges potential harm to his career with some specificity, but not enough. *Compare Doe v. Rector & Visitors of the Univ. of Va.*, No. 3:19-cv-00038, 2019 WL 2718496, at *6 (W.D. Va. June 28, 2019) (finding irreparable harm where the plaintiff indicated that his job offer was "contingent on receiving [his] degree and providing a copy of [his] transcript . . . documenting that [he had] graduated"), *with Doe v. Wake Forest Univ.*, No. 1:23-cv-00114, 2023 WL 2239475, at *9 (M.D.N.C. Feb. 27, 2023) (finding plaintiff's allegation that he would lose planned employment with "an unnamed future employer" too speculative to support likelihood of irreparable harm). Yanko fails to provide sufficient evidence to suggest that he would be unable to follow the same career trajectory on a delayed timeline should he need to continue his medical leave or find a new resident position elsewhere.

The court therefore finds that Yanko has not carried his burden to show a likelihood of irreparable harm in the absence of immediate preliminary relief.

Accordingly, the court will deny Plaintiff Oleksandr Yanko's emergency motion for a temporary restraining order (Dkt. 2).

An appropriate Order will issue.

**ENTERED** this <u>22nd</u> day of October, 2025.

*/s/ Jasmine H. Yoon*

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE